IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

THULA THOMAS

     Plaintiff,

v.                                                                    No. 04-3002 B

FIRST TENNESSEE BANK,

     Defendant.

_____

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE

_____

## INTRODUCTION

This lawsuit has been brought by the Plaintiff, Thula Thomas, against the Defendant, First

Tennessee Bank ("First Tennessee"), alleging discrimination on the basis of race and retaliation in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1981

and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401, et seq.  The Defendant has

moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all

claims asserted by the Plaintiff.

## STANDARD OF REVIEW

Rule 56 states in pertinent part that a

> . . . judgment . . . shall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.

Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir.

1988).

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on [her] pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356.  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).  The "judge may not make credibility determinations or weigh the evidence."  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

The following facts are undisputed unless otherwise noted.  The Plaintiff was hired by First Tennessee Bank National Association d/b/a First Horizon Money Center in June 2000, which provided loans including nonconforming real estate and auto loans.  In August 2001, Thomas was promoted to the position of director of sales.  On November 8, 2001, the Plaintiff was interviewed by Bryan Grissom, a loss prevention officer for the Defendant's corporate security department concerning problems with loan documents.  Following the interview, Thomas, in accordance with corporate practice, was placed on suspension pending the outcome of the investigation.  Instead, she requested and received eight weeks of paid leave.  The Plaintiff filed the first of five discrimination

2

charges against the Defendant with the Equal Employment Opportunity Commission ("EEOC") the following day, alleging race and sex discrimination and harassment ("Charge No. 1").  According to Thomas, the basis of her charge was that she had been told by four white male managers that they had also improperly handled loans but received only verbal warnings.[1]  Charge No. 1 was dismissed by the EEOC, which issued a right to sue letter January 18, 2002.

When she returned from leave, the Defendant presented her with a memorandum of understanding, dated January 7, 2002, reflecting the lending policy and procedure errors brought to light in the corporate security department investigation.  No discipline was imposed based in part upon her contention that she had not been adequately trained.  Thomas filed her second EEOC charge ("Charge No. 2") the next day, January 8, 2002, alleging race discrimination and retaliation.  She submitted in the charge that, on her return to work, her position was eliminated and her salary reduced, while other "director level employees" did not receive a reduction.[2]

During the pendency of Charge No. 2, Plaintiff, in late January 2002, complained that her loans were being targeted for review.  On March 21, 2002, the EEOC issued a right to sue letter as to the second charge.  Less than a week later, the Plaintiff was promoted to the position of manager of the Southeast Memphis Money Center.

In August 2002, the First Horizon Money Centers were sold to another company identified by the parties as American General.  As a result, Thomas applied for and was offered the position

---

[1]The Plaintiff does not contend that this action was a violation of her rights.  She identifies Charge No. 1 only as a protected activity with respect to her retaliation claim.

[2]As with Charge No. 1, Charge No. 2 is not offered as the basis for any claim asserted by the Plaintiff.  Its filing is merely identified as a protected activity for purposes of her retaliation claim.

3

of loan specialist for First Tennessee Bank.  She was also offered a loan originator job with First Horizon Home Loan Corporation.  She accepted the First Horizon position and it is undisputed that at that point she became an employee of First Horizon Home Loan Corporation, a subsidiary of First Horizon National Corporation, at its Crosstown location in Memphis effective September 4, 2002.[3] Later, in correspondence to Crosstown branch manager Jackie Fanion, a black female, dated February 4 and 11, 2003, Thomas claimed that her business efforts and loans were being sabotaged in not being processed in a timely manner by other employees.  In neither of these communications did she mention race.  She identified these individuals in her deposition as Fanion and two loan processors, Regina Terry and Kernita Patterson, also black females.  It was her theory that First Tennessee directed the three to undermine her.  In November 2003, Fanion left First Horizon and was replaced by Pat Northcott, a white female, who at the time was manager of First Horizon in Southhaven, Mississippi.

On December 11, 2003, the Plaintiff filed a third EEOC charge ("Charge No. 3"), alleging race discrimination and retaliation, arising from the sabotage of her files, as well as the routing of customers away from her branch and the transfer of a new loan processor, Deborah McNeal, also a black female, to Crosstown for the purpose of making her look bad.  Thomas further advised the EEOC that the Defendant prohibited her from selling certain types of loans while other loan officers

---

[3]According to her deposition, after Thomas applied for and had been offered the loan specialist position at First Tennessee, and while she and the employer were engaged in salary negotiations, she was contacted by a Susan Lee, who asked if she would have lunch with Lee and Crosstown branch manager Jackie Fanion.  They met at a restaurant, where Fanion offered her a position as a loan originator at First Tennessee Home Loans.  They discussed money.  Fanion showed Thomas some of her check stubs, indicating how much money could be made in the home loans division and advised her that she could bring her customers from Money Center with her.  (Dep. of Thula Thomas ("Thomas Dep.") at 41-42)

did not suffer the same restriction.  She voluntarily withdrew Charge No. 3 two days later.

According to First Tennessee, Northcott began to have concerns about Thomas's work shortly after becoming manager of the Crosstown branch, which she discussed with the Plaintiff. In January 2004, Linda Bacon, manager of employee relations for the Defendant, received letters from Fanion and an outside individual complaining on unprofessional conduct on the part of Thomas.  The Defendant avers that Northcott and Bacon intended to meet with the Plaintiff on February 6, 2004 to discuss the matter and issue a written warning.  However, on February 5, Thomas went into the hospital and remained out of the office on medical leave for the next eight weeks.  When the Plaintiff advised Northcott in mid-March 2004 that she would be returning from medical leave, Northcott reminded her of the meeting originally scheduled for February 6.  Thomas met with Northcott and Bacon on April 13, 2004, during which the Plaintiff was presented with the February 6 written warning and advised she had been terminated.  According to First Tennessee, the reason for the termination was her improper handling and submission of loan files.  On April 6, 2004, after Northcott reminded her of the previously scheduled meeting but prior to the date the rescheduled meeting occurred, Thomas filed a fourth EEOC charge ("Charge No. 4"), again alleging race discrimination and retaliation.  In this charge the Plaintiff also indicated that she had been rejected for a promotion for a management position.  The fifth charge ("Charge No. 5") was filed September 16, 2004, in which Thomas asserted that she had been terminated in retaliation for her previous discrimination charges, specifically referring to Charge No. 4.  Right to sue letters were issued as to Charge No. 5 on September 21, 2004 and Charge No. 4 on September 28, 2004.

## ANALYSIS OF THE PARTIES' CONTENTIONS

At the outset, the Court notes that, in her response to the instant motion, the Plaintiff advises that she abandons her allegations of (1) discrimination based on disparate impact and (2) discrimination under the THRA.  Accordingly, these claims are DISMISSED.

Disparate Treatment.

The Court next turns to the Plaintiff's claims of race discrimination under Title VII and § 1981.  Although First Tennessee contends in its dispositive motion that it is not the correct defendant as to some of Plaintiff's claims, the Court will assume for purposes of this order that Thomas has named the appropriate defendant and that First Tennessee and First Horizon are the same entity.  The Plaintiff's specific contentions will be addressed seriatim.

Timeliness of Claim under Title VII..

First Tennessee maintains that Thomas's allegations relative to her acceptance of the position at the Crosstown branch were time-barred and that, even if they were in fact timely, the Plaintiff failed to establish the elements of her claim.  As previously stated, Thomas began her employment at the Crosstown branch on or about September 4, 2002.  (Thomas Dep. at 40)  In Tennessee, a plaintiff must file a charge with the EEOC within 300 days of the alleged discrimination.  42 U.S.C. § 2000e-5(e)(1); Tartt v. City of Clarksville, 149 F.App'x 456, 460 (6th Cir. 2005).  While the bar is not jurisdictional, "it does have the effect of a statute of limitation, and is not to be waived without good cause."  Tartt, 149 F.App'x at 460 (citing Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 376 (6th Cir. 2002)).  Only two of Thomas's EEOC charges, Charges 4 and 5 filed April 6 and September 16, 2004, respectively, were brought after the Plaintiff took the position at the Crosstown branch and neither alleged discrimination based on her acceptance of that position.  Accordingly, her disparate treatment claim as to the position at Crosstown is time-barred under Title VII.

Timeliness of Claim under § 1981.

Turning to § 1981, the statute does not itself contain a statute of limitations.  In 1987, the United States Supreme Court instructed that federal courts should apply the "most appropriate or analogous state statute of limitations" to claims brought under § 1981.  Goodman v. Lukens Steel Co., 482 U.S. 656, 660, 107 S. Ct. 2617, 2620, 96 L. Ed. 2d 572 (1987).  Thereafter, the Sixth Circuit concluded that the limitations period for § 1981 actions in Tennessee was the state's one-year period provided for in Tennessee Code Annotated § 28-3-104.  See Jackson v. Richards Med. Co., 961 F.2d 575, 578 (6th Cir. 1992).  However, on December 1, 1990, Congress enacted a catch-all four-year statute of limitations provision applicable to all federal causes of action arising on or after that date.[4]

Section 1981, as first enacted in 1870, provided that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a); see also Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372, 124 S. Ct. 1836, 1839-40, 158 L. Ed. 2d 645 (2004).  In Patterson v. McLean Credit Union, 491 U.S. 164, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989) the Supreme Court held that the statutory right under § 1981 to "make and enforce contracts" provided protection from discriminatory conduct in "the formation of a contract, but not to problems that may arise later from the conditions of continuing employment."  Patterson, 491 U.S. at 176, 109 S. Ct. at 2372.  In response, Congress amended § 1981 in 1991 to add a new subsection that defined the

---

[4]The catch-all period is codified at 28 U.S.C. § 1658, which provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).

term "make and enforce contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b); see also Jones, 541 U.S. at 372-73, 124 S. Ct. at 1839-40.  As a result of the 1991 amendments, discriminatory conduct by an employer during the "post-formation" employment relationship is also within the ambit of § 1981.

In Jones, the United States Supreme Court settled a discrepancy among the federal courts as to whether the four-year catch-all statute of limitations in § 1658 applies to § 1981 by holding that "the 1991 Act fully qualifies as 'an Act of Congress enacted after December 1, 1990' within the meaning of § 1658." Jones, 541 U.S. at 383, 124 S. Ct. at 1846.  As such, if a claim was made possible by the 1991 amendment to § 1981, the four-year statute of limitations provided by § 1658 applies. Id. at 382, 124 S. Ct. at 1845.  Conversely, if the claim was actionable under § 1981 prior to the 1991 amendments, the one-year period of limitations from Tennessee law applies.  See id., 124 S. Ct. at 1845 (noting that the Court's holding "leaves in place the 'borrowed' limitations periods for pre-existing causes of action").  Whether a one or four-year statute of limitations applies to a plaintiff's claims depends, therefore, on whether such a claim would have been actionable under the pre-1991 version of § 1981.

Merits of Disparate Treatment Claims.

However, the Court need not determine which statute of limitations period applies, as the claim is without merit.  "Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors."  Quinn-Hunt v. Bennett Enters., Inc., No. 05-4646, 2006 WL 3780309, at *3 (6th Cir. Dec. 21, 2006) (citing Amini v. Oberlin Coll., 440 F.3d 350, 358 (6th Cir. 2006)).  Where, as is the case here, there is no direct evidence of an

intent to discriminate, courts are instructed, whether the action is brought under Title VII or § 1981, to utilize the well-settled burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  See Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572-73 (6th Cir.), cert. denied, 531 U.S. 1052, 121 S. Ct. 657, 148 L. Ed. 2d 560 (2000).  In order to establish a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated . . . nonminority employees for the same or similar conduct." McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd., 440 F.3d 320, 332 (6th Cir. 2006).  If the plaintiff "sustains her burden of establishing a prima facie case, the burden then shifts to [the employer] to articulate a legitimate, nondiscriminatory reason for [its actions].  If [the employer] successfully carries its burden, the burden returns to [the plaintiff] to produce evidence from which a jury could find that [the employer's] stated reason is merely pretextual." Id.  Pretext may be demonstrated by showing that the articulated reasons "(1) had no basis in fact, (2) did not actually motivate the adverse action taken against [the plaintiff], or (3) were insufficient to motivate the adverse action taken against [the plaintiff]." Id. (citation omitted).

Clearly, the Plaintiff, a black female, has satisfied the first prong of the prima facie case. With respect to the second element, Thomas avers in her response that she suffered the following adverse actions:  (1) she was assigned to an exclusively black branch, frustrating her efforts to develop a diverse client base rather than one that was predominately African-American; (2) she was not permitted to transfer to the West Memphis, Arkansas branch or to do bond loans from that office;

(3) the processing of her loans was delayed; (4) her white customers were being diverted to branches manned by white employees; (4) her work was observed through the use of a co-worker sent to keep an eye on her; and (5) she was terminated.

Not every employment action disliked by an employee is sufficient to satisfy the adverse action element of the discrimination claim.  Rather, an adverse action must be a *materially adverse* change in the terms or conditions of plaintiff's employment caused by the employer's actions. Bowman v. Shawnee State Univ., 220 F.3d 456, 461-62 (6th Cir. 2000).  Thus, in order to be actionable, the adverse action must be "sufficiently severe."  See Halloran v. Minn. Old Nw. Agents Ltd. P'ship, 58 F. Supp. 2d 831, 841 (W.D. Tenn. 1999).

> A materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Bowman, 220 F.3d at 461-62.

De minimis actions are not materially adverse and are not actionable.  Id. at 462.  In Kocsis v. Multi-Care Management, Inc., 97 F.3d 876 (6th Cir. 1996), the Sixth Circuit, in discussing this issue, noted that reassignment, a requirement that an employee sign an agreement with the employer as a condition of promotion, a negative public perception concerning a transfer or a particular job, a transfer to a position with different responsibilities, semantic changes in title, and the bruising of an ego did not, without more, rise to the level of "materially adverse changes" in the terms of employment.  Kocsis, 97 F.3d at 885-87.  Courts in this circuit have also found that a reprimand or an involuntary transfer, absent loss of pay or benefits, or change in duties, does not constitute a materially adverse change in employment.  See Akers v. Alvey, 338 F.3d 491, 498 (6th Cir. 2003);

Reid v. Madison County, Tenn., No. 98-5312, 1999 WL 196560, at *2 (6th Cir. Apr. 1, 1999);

Halloran, 58 F. Supp. 2d at 841.  "An employee's subjective impressions as to the desirability of one

position over another are not relevant."  Policastro v. Nw. Airlines, 297 F.3d 535, 539 (6th Cir.

2002), reh'g & suggestion for reh'g en banc denied (Oct. 2, 2002).  Similarly, "an employee's

subjective view about an employment action, without further evidentiary support, may not by itself

establish that the decision" was discriminatory.  Kinamore v. EPB Elec. Util., No. 1:00-CV-416,

2002 WL 32059025, at *6 (E.D. Tenn. Apr. 11, 2002), aff'd, 92 F.App'x 197 (6th Cir. 2004).

At the outset, the Court is frankly at a loss to understand how being hired for a position can

be "adverse."  There is no evidence to indicate that First Tennessee forced or steered her to the

Crosstown Branch over any other location.  Indeed, it is undisputed that Thomas was offered

positions at other locations and declined or decided not to pursue them.  (See Thomas Dep. at 41-42)

Nor is there any proof that being hired to work at a branch that at the time of her hiring was

exclusively staffed by black employees was adverse.  The fact that the staffing situation made her

subjectively "uncomfortable" is irrelevant.  See Policastro, 297 F.3d at 539 (plaintiff's subjective

impressions not sufficient to demonstrate adverse action).  Similarly, the subjective characterization

of the Crosstown branch as "unusual" based on its exclusively black staff by co-worker Ronald

Wright in his deposition is of no benefit to the Plaintiff.  See id. (subjective impressions

insufficient).  Furthermore, when Northcott was hired as branch manager to replace Jackie Fanion

and Kim Robinson, also a white female, was brought in as a loan processor in December 2003, the

branch was not exclusively staffed with blacks.[5]  In any case, there is no evidence that Thomas

---

[5]It strikes the Court as somewhat disingenuous for the Plaintiff to claim on the one hand
that First Tennessee practiced discrimination by employing only blacks at the Crosstown branch
and on the other that hiring a white manager, who brought with her a white loan processor, was

suffered a loss of pay or benefits, or significantly diminished material responsibilities in comparison to the position she held prior to moving into the Crosstown branch job. As she has failed to establish that she suffered an adverse employment action, her claim based on her acceptance of the position at the Crosstown branch cannot proceed. See McClain, 440 F.3d at 332 (setting forth elements of race discrimination claim).

Neither did the failure of First Tennessee to approve a lateral transfer to the West Memphis, Arkansas branch, absent any evidence whatever of material changes in the conditions of her employment, i.e., lost wages or benefits, constitute an adverse action.[6] See Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005) (quoting Williams v. R.H. Donnelley Corp., 368 F.3d 123, 128 (2d Cir. 2004)) ("the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer an adverse employment action"); Ritcheson v. C.C. Servs., Inc., 79 F.App'x 927, 928 (7th Cir. 2003), cert. denied, 541 U.S. 1085, 124 S. Ct. 2811,

_____

also racially discriminatory. She cannot have it both ways. Indeed, if First Tennessee had hired Thomas as manager of the Crosstown branch instead of Northcott, one wonders if the resulting maintenance of the status quo with respect to black staffing of the branch would have continued to offend her.

[6]The Plaintiff points out in her affidavit that Janice Murphree, the West Memphis branch manager, told her that she could not work out of Murphree's branch because "there was not room enough for both of [them] to work out of West Memphis." (Aff. of Thula Thomas ("Thomas Aff.") at ¶ 4) Because Murphree and her staff were white, Thomas took the statement to mean her race was unacceptable. (Thomas Aff. at ¶ 4) According to her deposition testimony, Murphree decided not to hire Thomas because she had applied for a commission job. The office already had two or three employees in such positions and Murphree determined there was not enough business at the branch to support another. (Dep. of Janice Murphree ("Murphree Dep.") at 15) Further, Murphree testified that, when Thomas asked if she could generate bond loans through the West Memphis office, Murphree called the matter to the attention of her superior, advising that her staff was dedicated to the West Memphis branch and that it would be difficult for her to track her employees if they were performing bond loan processing for someone in a different branch office. (Murphree Dep. at 18)

159 L. Ed. 2d 246 (2004) (failure to be awarded purely lateral transfer is not an adverse employment action); Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999) ("a plaintiff who is . . . denied a lateral transfer-that is, one in which she suffers no diminution in pay or benefits-does not suffer an actionable injury[;] [m]ere idiosyncracies of personal preference are not sufficient to state an injury").  For the same reason, the Defendant's failure to permit her to make bond loans out of the West Memphis office are not adverse.  See Bowman, 220 F.3d at 461-62 (articulating the type of action necessary to support an "adverse employment action" finding).

With respect to her claims that her loans were not being processed, the Plaintiff has offered no evidence to support the fourth element of the discrimination claim--that other employees outside the protected class were treated differently.  Of significance for purposes of the racial discrimination claim is the fact that she has not alleged the other black employees at the Crosstown branch had trouble getting their loans timely processed.  Indeed, as noted above, Thomas in her deposition testimony charges that her loans were being "sabotaged" by other blacks at the Crosstown branch and that she was being singled out for such treatment.  Even if these assertions are true, she cannot recover for race discrimination if she was mistreated by other blacks because they disliked her. Further, mere speculation, as offered in her deposition, that black employees at Crosstown were picking on her on the instructions of First Tennessee's upper management is not, without supporting evidence, sufficient to escape summary judgment.  See Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 724 (6th Cir. 2006) ("mere personal beliefs, conjecture and speculation are insufficient to support an inference of discrimination").

Other claims posited by the Plaintiff also fail at the fourth element of the discrimination

13

claim.[7]  Thomas argues that Northcott failed to follow First Tennessee's progressive disciplinary system when she fired her.  However, the Plaintiff has offered no evidence, as she must, to suggest that white employees were treated differently.  See McClain, 440 F.3d at 332 (setting forth elements of discrimination claim).  Similarly, she has produced no proof that white employees were treated differently in support of her claim that she was spied upon by co-workers at the behest of management or that she was denied training.  See id.  Thomas has also failed to show that white employees of First Tennessee who improperly handled and submitted loan files were not terminated. See id.

In addition, Thomas's assertion that her white customers were diverted to white bank branches does not support her racial discrimination claim.  The only loans specifically identified by Thomas were two, involving customers identified as Joe Bucher and Looney, which she alleges were referred to all-white branches in East Memphis.  The Plaintiff points to her affidavit and Northcott's deposition as supportive of her averment.  However, the affidavit contains only a bald assertion that the Bucher loan was steered to the Lynnfield branch.  (See Thomas Aff. at 3)  As for the Looney loan, she states in her affidavit that it was held up and closed after her termination, but offers no information concerning whether it was closed at a different branch.  (See Thomas Aff. at 3)

Failure to Promote.

Timeliness.

_____

[7]Based on its decision, the Court need not address the Defendant's arguments concerning whether the Plaintiff was qualified for her position.  Moreover, as the Plaintiff has failed to establish a prima facie case of race discrimination, the Court need not engage in the McDonnell-Douglas/Burdine burden-shifting analysis.

The Defendant argues that Thomas's claims that it failed to promote her in violation of Title VII and § 1981 are time-barred.  In her response to the motion, the Plaintiff appears to concede that the Defendant is correct as to Title VII.  Therefore, her Title VII action based on a failure to promote is DISMISSED.  As to the failure to promote claim under § 1981, she contends that the four-year statute of limitations period applies.  Before the 1991 amendments to § 1981, only those failure to promote claims which rose to the "level of an opportunity for a new and distinct relation between the employee and the employer" were actionable under§ 1981.  Patterson, 491 U.S. at 185, 109 S. Ct. at 2377.  Thus, where a promotion amounts to the formation of a new relationship between employee and employer, the one-year statute of limitations is properly applied.  Several courts have concluded that a "new and distinct relationship" should not be measured by quantitative terms, such as pay raises, but rather by whether there "exists a meaningful, qualitative change in the contractual relationship" such as a change from non-supervisory to supervisory positions or advancements from hourly to salaried compensation.  Cross v. The Home Depot, 390 F.3d 1283, 1289-90 (10th Cir. 2004); see also Malone v. State of Tenn., No. 03-2869 B, 2005 WL 2671343, at *6 (W.D. Tenn. Oct. 19, 2005).  In Malone, this Court held that where "the promotion[] at issue [was] best characterized as a mere advancement in [the plaintiff's] career path," no new and distinct employment relationship existed and, therefore, the four-year statute of limitations was applicable.  Malone, 2005 WL 2671343, at *6 (citation and internal quotation marks omitted).

Here, the Plaintiff submits that her allegation concerning First Tennessee's failure to promote her in October 2003 to the open manager position at the Crosstown branch after it was vacated by Jackie Fanion is timely, as her complaint, filed December 10, 2004, was brought within four years of the date the Defendant hired Northcott.  It is undisputed that the position Thomas held at the

Crosstown branch was not a management position.  Therefore, as it constituted a change from a non-supervisory to a supervisory position, a promotion to Fanion's job as branch manager would have been the type of "new and distinct" relationship to which the four-year period does not apply.  See Cross, 390 F.3d at 1289-90; Malone, 2005 WL 2671343, at *6; see also Hithon v. Tyson Foods, Inc., 144 F.App'x 795, 797-99 (11th Cir. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 1331, 164 L. Ed. 2d 48 (2006) (four-year catch-all limitations period did not apply to plaintiff's claim of failure to promote to human resources manager of corporate complex with final decision over subordinate facilities, where she had previously worked in supervisory and management positions for one subordinate facility; human resources position was "new and distinct relation" to which § 1658 provision did not apply).  Consequently, the Plaintiff's claim of discrimination based on a failure to promote must have been filed within one year in order to be timely.[8]

Thomas insists in her affidavit filed in response to the motion for summary judgment that she did not learn the position of branch manager had been filled until December 18 or 19, 2003, when Northcott actually began working at the branch and that, therefore, her complaint was timely.  (See Thomas Aff. at ¶ 2)  In its reply, the Defendant submits that Thomas's affidavit is inconsistent with her earlier deposition testimony, in which she averred that she did not know when Northcott arrived, recalling only that it was "[m]id-December, early December, late December[; b]ut sometime in December."  (Thomas Dep. at 279)

In Reid v. Sears, Roebuck and Co., 790 F.2d 453, 460 (6th Cir. 1986), this Circuit set forth

---

[8]The Court notes at this point that the alleged failure to promote as to the Crosstown branch manager position is a discrete act.  Accordingly, the continuing violation doctrine does not apply.  See Kinley v. Norfolk S. Ry. Co., 230 F. Supp. 2d 770, 776-77 (E.D. Ky. 2002) (failure to promote claim, premised on separate, discrete act, does not implicate continuing violation doctrine).

the general rule that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his or] her earlier deposition testimony."  In Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 907 (6th Cir. 2006), reh'g denied (Jun. 20, 2006), the Circuit court explained that a party may, however, "supplement[] incomplete deposition testimony with a sworn affidavit.  Such an affidavit fills a gap left open by the moving party and thus provides the district court with more information, rather than less, at the crucial summary judgment stage."  The court emphasized in Aerel the importance of distinguishing between "legitimate efforts to supplement the summary judgment record from attempts to create a sham issue of material fact."  Aerel, S.R.L., 448 F.3d at 907.

Based on a review of the deposition and the affidavit, the Court finds that the statement made in the affidavit falls most appropriately into the category of a clarification or supplementation of her earlier deposition testimony.  Thus, the Court considers the claim for failure to promote to be timely filed.[9]

Merits of the Claim.

In order to establish a discrimination claim based on a failure to promote, the plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was considered for and denied the promotion; and (4) another employee with similar qualifications who was not a member of the protected class received the promotion.  See Grizzell, 461 F.3d at 719.

The Defendant appears to take issue with that portion of the fourth element relating to the

---

[9]Northcott testified in her deposition that she began working out of the Crosstown branch the first or second week of December, 2003.  (See Dep. of Pat Northcott ("Northcott Dep.") at 9)

17

"similar qualifications" of the individual who received the promotion.  To satisfy the fourth element of the prima facie case, the Plaintiff must show that her qualifications were similar to Northcott's.  See Campbell v. Univ. of Akron, No. 05-4528, 2006 WL 2986404, at *11 (6th Cir. Oct. 17, 2006) (recognizing that plaintiff in failure to promote case must show that his qualifications were similar to those of the person receiving the promotion).  To that end, the Court is to conduct an independent review of the relative qualifications of Thomas and Northcott based on the evidence presented in order to determine whether the fourth prong of the prima facie case is satisfied.  See White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 243 (6th Cir. 2005).

At the time she was hired to manage Crosstown, Northcott was also the manager of the Southhaven, Mississippi branch, where she had been manager for five years.  (Northcott Dep. at 7, 9-10)  From December 2003 to June 2004, she managed both branches.  (Northcott Dep. at 9-10)  In all, Northcott was employed by First Tennessee for some 25 years, working first as a loan processor and moving into management in 1985.  (Northcott Dep. at 7, 10)

For her part, the Plaintiff avers in her affidavit that she had management and mortgage experience, that her work history "showed great abilities to produce loan volume," that she had the respect of her staff, and that she had achieved Golden Circle status at the Money Center and President's Club status at Crosstown.  (Thomas Aff. at 7)  According to her deposition, the Plaintiff began working at the Winchester Money Center location in June 2000 as an assistant manager.  (Thomas Dep. at 35)  In 2001, she was promoted to director of sales for the Money Center.  (Thomas Dep. at 131)  She became manager at the Winchester facility in March 2002 and left in August of the same year due to the sell-off of the Money Centers to American General.  (Thomas Dep. at 38)  Upon accepting the position at Crosstown, she admitted that she was "kind of scared" because she had

18

never done straight sales.  Fanion encouraged her, however, pointing out that, because she had been a good producer at the Money Centers, she could benefit from a move to the mortgage division, where she would be dealing with "A" paper instead of subprime.  (Thomas Dep. at 42)

Thus, the Plaintiff has shown that she had some three years experience in management by December 2003, compared to Northcott's 18 years in management at First Tennessee.  Moreover, Northcott came from another branch within the First Tennessee system, whereas Thomas's experience at the Money Centers had, by her own admission, been different from the type of work performed at the First Tennessee branch.  As a consequence, the Plaintiff has failed to show that she and Northcott had "similar qualifications."  See White, 429 F.3d at 243-44 (plaintiff failed to establish fourth element of claim where evidence showed that individual who received promotion had 17 years experience in comparison to the plaintiff's seven years of experience).  Her failure to promote claim therefore fails.

Retaliation.

It is the Plaintiff's position that she was retaliated against because of charges filed by her with the EEOC.[10]  To establish a prima facie case of retaliation, a plaintiff must show that "(1) [s]he engaged in a protected activity; (2) [her] engagement in that protected activity was known to [her] employer; (3) [her] employer, thereafter, took an action that a reasonable employee would have found to be materially adverse; and (4) a causal link exists between [her] engagement in the protected activity and the adverse action."  Morgan v. Masterfoods USA, Inc., No. 2:04-CV-907, 2006 WL

---

[10]In her response to the motion, the Plaintiff advises that she has two retaliation claims-- one based on her EEOC charges and the other on harassment experienced while in the Defendant's employ based on her race.  To the extent she suggests that she was retaliated against for being black, the argument makes no sense.  One can be *discriminated* against for being black, but a claim of retaliation is based on engaging in protected activity.  See supra.

3331780, at *8-9 (S.D. Ohio Nov. 14, 2006).  In <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, ___

U.S. ___, ___, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court recently held, with

respect to the third element, that "a plaintiff must show that a reasonable employee would have found

the challenged action materially adverse, which in this context means it well might have dissuaded

a reasonable worker from making or supporting a charge of discrimination."  <u>White</u>, 126 S. Ct. at

2415 (citations and internal quotation marks omitted).  The Court noted that this definition of an

"adverse employment action" is broader than that applied in suits involving Title VII's anti-

discrimination provisions.  <u>Id.</u>; <u>see also</u> <u>Dendinger v. State of Ohio</u>, No. 05-4478, 2006 WL 3311284,

at *4 n.6 (6th Cir. Nov. 14, 2006) (recognizing <u>White</u> Court's holding); <u>Campbell</u>, 2006 WL 2986404,

at *14 n.14  (same).

  The first element of the prima facie case has been satisfied, as the filing of an EEOC charge

is a protected activity.  <u>Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.</u>, 176 F.3d 921, 929-

30 (6th Cir. 1999), <u>reh'g</u> <u>denied</u> (Jun. 30, 1999) (recognizing filing of EEOC charge as protected

activity in retaliation claim).  The Plaintiff has specifically identified the following acts engaged in

by the Defendant in retaliation for her protected activity:  (1) assignment to the Crosstown branch

and (2) her termination.  The Defendant denies that any of the individuals responsible for her

termination had any knowledge of her EEOC charges, however, the Plaintiff states in her affidavit

that she observed a copy of one of the charges in Fanion's files around the time Fanion left the branch

in November 2003.  Thus, the statement contained in the affidavit arguably raises a genuine issue of

material fact as to whether those responsible for her placement at the Crosstown branch were aware

of the EEOC charges.

  Even if the Court were to assume that acceptance of the position at Crosstown was an adverse

employment action under <u>White</u>, the Plaintiff still has failed to demonstrate a causal connection between that act and her EEOC filings.  In order to establish the causal link, a plaintiff must show more than temporal proximity.  The Sixth Circuit has held that "the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim."  <u>Balmer v. HCA, Inc.</u>, 423 F.3d 606, 615 (6th Cir. 2005) (quoting <u>Booker v. Brown & Williamson Tobacco Co.</u>, 879 F.2d 1304, 1314 (6th Cir. 1989)).  Thomas accepted an offer to work at the Crosstown location in early September 2002, 10 months after the filing of Charge No. 1 and eight months after Charge No. 2 was filed.  A period of eight months between the protected activity and the adverse action has been held, standing alone, insufficient to raise an inference of retaliation.  <u>See</u> <u>McCrary v. Ohio Dep't of Human Serv.</u>, No. 99-3597, 2000 WL 1140750, at *4 (6th Cir. Aug. 8, 2000), <u>cert.</u> <u>denied</u>, 531 U.S. 1016, 121 S. Ct. 577, 148 L. Ed. 2d 494 (2000) (eight month period not sufficient to sustain retaliation claim); <u>Khouri v. Frank Cuneo Hosp. of Columbus-Cuneo-Cabrini Med. Ctr.</u>, No. 90-1680, 1991 WL 46406, at *7 (7th Cir. Apr. 2, 1991) (same).  Although the Plaintiff also refers generally in support of the causal link to evidence suggesting that First Tennessee sent a loan processor to assist her when in fact the individual was instructed to "watch" Thomas, she cites to no proof establishing the date on which this action occurred.[11]

    As for her termination, Thomas has proffered nothing whatever to support a finding that any

_____

    [11]According to the Plaintiff, Ann Sangster was the person who transferred the loan processor to spy on Thomas.  While not mentioned or cited to by her attorney, the Court notes that, in her affidavit, Thomas states that she had "personal knowledge that . . . Ann Sangster knew" of her EEOC charges prior to beginning work at Crosstown.  (Thomas Aff. at 4) However, there is no evidence beyond this self-serving statement, not even argument by counsel, to support a conclusion that there was any causal connection between this alleged knowledge and the transfer of the loan processor to Plaintiff's location.

of the individuals involved in her termination had knowledge of the filing of Charge No. 4 a week

before the discharge occurred.  Obviously, no actions on the part of the Defendant could have been

in retaliation for the filing of Charge No. 5, which took place after the Plaintiff was terminated.

Hostile Work Environment.

> In order to establish a prima facie case of hostile work environment based on race .
> . ., a plaintiff must show: 1) that [she] is a member of a protected class; 2) that [she]
> was subjected to unwelcome racial harassment; 3) that the harassment was based on
> race; 4) that the harassment had the effect of unreasonably interfering with [her] work
> performance by creating an intimidating, hostile, or offensive work environment; and
> 5) the existence of employer liability.  In determining whether there was a hostile or
> abusive workplace environment, [the court is to] look to the totality of the
> circumstances.  Specifically, [the court is instructed to] consider the frequency of the
> discriminatory conduct; its severity; whether it is physically threatening or
> humiliating, or a mere offensive utterance; and whether it unreasonably interferes
> with an employee's work performance. . . . Finally, the work environment must be
> both objectively and subjectively offensive.

Newman v. Fed. Express Corp., 266 F.3d 401, 405 (6th Cir. 2001) (internal citations and quotation

marks omitted); see also Smith v. Nat'l Coll. of Bus. & Tech., No. 03:04-0038, 2006 WL 889495, at

*6 (M.D. Tenn. Mar. 29, 2006) (applying same standard to hostile work environment claims brought

under § 1981).

The Defendant submits that Thomas cannot establish the third element of the claim.  She has

offered a veritable plethora of instances which she claims made her tenure at First Tennessee a hostile

working environment, including unusual scrutiny of her loans; failure to timely or correctly process

her loans; removal of documents from her files; questions, concerns and complaints being ignored;

and being yelled at by her supervisor.  None support the conclusion that the alleged harassment was

based on race.  It is undisputed that the delays in loan processing and the "sabotaging" of her loans

were instigated by other black employees.  The Plaintiff's belief that these employees were being

instructed to do so by First Tennessee management is speculative at best.

There is nothing to indicate that other scrutiny of her work and business practices, apparently evidenced by McCarty's transfer to her location for the purpose of keeping an eye on her, was racially motivated.  According to McCarty's deposition, Ann Sangster, a district manager, told her that "since [she] was one of the most experienced and best ASRs that they were sending [her] to work [with] Thula because she was the highest producer and that she needed a good ASR.  But [she] was also told to be attentive to what was going on, and to let them know if [she] saw anything that seemed out of the norm."  (Dep. of Darolyn McCarty ("McCarty Dep.") at 29)  No mention was made in the deposition concerning race.  She also opined that Sangster appeared to be jealous of Thomas's production ability.  (McCarty Dep. at 30)

As to her contentions that removal of documents from her files; questions, concerns and complaints being ignored; and being yelled at by her supervisor created a hostile work environment, the Plaintiff has conclusorily recited these allegations with no citation to the record.  Thus, the Court finds they lack evidentiary support.  In addition, there is no evidence to indicate that Thomas's claims that she was denied the ability to sell certain types of loans or that she did not receive responses from her inquiries relative to other open positions within the Defendant company were based on race.

Even if the movement of two of her loans for white customers from the Crosstown branch to other branches could be considered based on race, there has been no showing that these acts, one of which appears to have occurred after she was fired, "unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment."  See Newman, 266 F.3d at 405 (setting forth elements of the hostile environment claim).

<u>CONCLUSION</u>

For the reasons articulated herein, the motion of the Defendant for summary judgment is

GRANTED and the Plaintiff's claims are DISMISSED in their entirety.  The Clerk is DIRECTED

to enter judgment for the Defendant.  Any and all pending motions are DENIED as moot and the

Case Manager is DIRECTED to remove all settings and proceedings in this matter from the Court's

calendar.

IT IS SO ORDERED this 10th day of January, 2007.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE